CUMBERLAND BONE COMPANY *vs.* ATWOOD LEAD COMPANY.

*Of the mutual assent necessary for an agreement.*

The defendants promised to furnish to the plaintiffs sulphuric acid for their "works." Neither the terms of payment nor the time for which the arrangement should continue, was agreed upon;—*Held,* that either side to the contract could terminate it at pleasure.

ON REPORT.

ASSUMPSIT upon an agreement said to have been entered into on the third day of May, 1870, at Cape Elizabeth, between these two corporations, there located, the plaintiffs being engaged in the preparation of superphosphate of lime, in the course of which they had occasion to use large quantities of sulphuric acid, the making of which was part of the defendants' business. The declaration, as originally drawn, alleged that, in consideration of the plaintiffs' promise to buy of the defendants all the "chamber acid" required in the prosecution of the Bone Company's business, the Lead Company agreed to sell the same to them, at a price stated, to be of a specified quality and strength, for a term of five years from the third day of June, 1870, being the time for which the Bone Company had hired certain premises, across the street from those of the Lead Company, payment for the acid to be made monthly, or sooner, after the delivery of the acid, if the defendants should require ; that the Bone Company, relying upon this arrangement, went on making superphosphate, and constantly increasing its production and sales, until January 1, 1873, the Lead Company

furnishing and the plaintiffs receiving and paying for all the "chamber acid" required in this business, under said agreement; but that from and after the day last mentioned, the Lead Company refused to furnish acid of the stipulated strength and kind, and in the quantity needed, and on the eleventh day of June, 1873, refused to supply the Bone Company with any more acid at all, to the great injury and interruption of the plaintiffs' business, and to their damage in the sum of twelve thousand dollars.

The plaintiffs subsequently moved to amend their declaration by striking out the statement that the defendants agreed to furnish what acid they required for five years and insert that they were to supply whatever quantity was required, till either party should terminate the agreement, which the defendants did not do till June 11, 1873.

The general issue was pleaded in defence, with a brief statement that the supposed agreement was not in writing, nor to be performed within one year, and that the acts of the plaintiffs had excused performance of it by the defendants. It appeared in evidence that the Bone Company removed their works from Duck Pond, where they commenced operations in 1865, to the grounds of the Kerosene Oil Company, in Cape Elizabeth, opposite the defendants' manufactory, in the spring of 1870; that they made the change with an expectation of having the acid needed for their business from the Lead Company's chambers, and that a pipe was laid under the street through which the chamber acid ran, by force of gravitation, from the defendants' factory to that of the plaintiffs; and that all that was required was thus supplied till the spring of 1873, when other contracts were made by the Lead Company with large manufacturing establishments in Lewiston and elsewhere that exhausted their producing capacity, and prevented their furnishing any acid to the Bone Company. The reason for entering into other engagements was an expectation that the plaintiffs would discontinue their business, owing to heavy losses of southern customers.

There were various conversations between the presidents of the

two corporations before the Bone Company moved to Cape Eliza-
beth, but it was contended that letters which passed between them
in May, 1870, established the contract. That of Mr. Goodale, for
the Bone Company, dated May 3, 1870, commenced thus :—"To
avoid forgetfulness or misapprehension of the arrangement in
regard to acid, let me here note what I understood to be agreed
upon, and please advise me if it be correctly stated, viz: That the
Atwood Lead Company will furnish the Cumberland Bone Com-
pany what sulphuric acid may be required, from the chambers, of
strength from 42 ° to 47 °, . . . . Settlements for acid by Cum-
berland Bone Company monthly, &c., as heretofore." . . . .

To this Mr. Atwood, for the Lead Company, on the ninth day
of May, 1870, replied :—"Yours of the third instant is at hand,
contents noted. Your statement of the agreement in regard to
acid is the same as I understood it, with the exceptions of the
terms of payment which I did not intend to settle, but leave for
our treasurer to arrange." . . . .

Submittted to the court for determination.

*S. C. Strout* and *H. W. Gage*, for the plaintiffs.

The amended declaration sets out a contract not within the stat-
ute of frauds, since the contingency upon which it depended was
liable to happen within a year. Brown on the Statute of Frauds,
§§ 274, 275, 276. The letters were a sufficient reduction of the
contract to writing. Id., §§ 346—353 ; *Salmon Falls Company*
v. *Goddard*, 14 Howard, 446.

*Strout & Holmes*, for the defendants.

If, as the amended declaration states, the arrangement was de-
terminable at the pleasure of either party, then a refusal to fur-
nish acid enough was as much a termination of the agreement
specified as a refusal to furnish any.

PETERS, J. The defendants were furnishing to the plaintiffs
sulphuric acid for their "works." There was some general under-
standing about it, but no contract that was binding. The parties

undertook to have a contract in writing. The plaintiffs made a proposition, communicated by letter. The defendants replied, accepting it, with the exception of the terms of payment, which were to be arranged. They never were arranged. In this correspondence no time was named, during which the acid should be furnished by the one side and taken by the other. We think that no binding executory agreement was entered into. Either side could retire from such an arrangement, whenever they pleased. There was not a perfect assent of the parties. Prof. Parsons says, "it becomes a contract only when the · proposition is met by an acceptance which corresponds to it entirely and adequately." It is evident enough that a complete and established agreement of parties was not negotiated by the correspondence and other testimony in the case. *Jenness* v. *Mt. Hope Iron Company*, 53 Maine, 23. The action, either in the original or amended form, is not maintainable.                    *Plaintiffs nonsuit.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.